[No. 15685. Department Two. April 22, 1920.]

FRANCES E. SLASOR, *Appellant*, v. KATE SLASOR, *as Executrix etc., Respondents.*[1]

TENANTS IN COMMON (1)—TRUSTS (11)—EXISTENCE OF RELATION —EVIDENCE—SUFFICIENCY. Findings that parties, contemplating matrimony, pooled their interests and became tenants in common or joint owners of property are not sustained, where it appears that the properties were contracted and partly paid for by the woman before any acquaintance with her future husband, who was without any means or business, that she gave him a power of attorney and he transacted her business for her, making some payments by checks signed as trustee, and on final payment took deeds to the property in his own name without her consent or knowledge.

HUSBAND AND WIFE (19, 47-1, 60)—WIFE'S SEPARATE PROPERTY— PURCHASED BEFORE MARRIAGE — EVIDENCE — SUFFICIENCY. Property contracted and paid for by the wife with deed delivered to her before marriage is her separate property; and where the bare legal title was placed in a bank as security for a loan, the fact that the bank, upon payment of the loan, redeeded the property to her and her husband does not make the same community property.

WILLS (79)—RIGHTS OF DEVISEES—TITLE OF DEVISOR. Where the testator was the holder of the bare legal title under a deed from one holding in trust, the property does not pass by his will, as the devisees take no greater interest than the devisor had to devise.

[1] Reported in 189 Pac. 546.

Appeal from judgments of the superior court for King county, Hardin, J., entered August 7, 1919, upon findings in favor of the defendants, in consolidated actions for equitable relief, tried to the court. Reversed.

*Ballinger & Hutson,* for appellant.

*Roberts & Skeel* and *L. B. Schwellenbach,* for respondent.

FULLERTON, J.—This is an appeal by Frances E. Slasor from judgments entered in favor of the respondents in three separate actions consolidated for trial in the lower court, and consolidated for hearing on appeal in this court.

There are certain undisputed facts in the record necessary to be mentioned which are common to all of the actions. Kate Slasor was formerly the wife of Joseph M. Slasor, having intermarried with him on November 29, 1879. Of this marriage were born the respondents, Ray Slasor and Gaylie Slasor, each of whom are now approaching the middle age in life. Kate Slasor and Joseph M. Slasor were divorced at Seattle, Washington, on November 11, 1903, at the suit of Mrs. Slasor, the grounds being cruel treatment and personal indignities rendering life burdensome, and neglect and refusal on the part of the husband to make suitable provision for his family. After the divorce, Joseph M. Slasor lived in the vicinity of Seattle until the late summer of 1908, when he met the appellant, who was then a widow bearing the name of Lester. His acquaintance with her ripened into a marriage, which was solemnized at Victoria, in British Columbia, on March 24, 1909. The record does not disclose much concerning the habits, occupation or business of Mr. Slasor between the time of his marriage

and the time of his death. It does appear, however, that, shortly prior to his death, which occurred on August 25, 1918, he became ill and went, or was sent, to a hospital. From the hospital he went to the home of his former wife, where he stayed something over a week, returning again to the hospital, where he died a few days later. While at his former wife's home, he made a will in which he devised all of his property to his former wife, Kate Slasor, during her life, with remainder over to his children, naming the former wife as executrix of the will. She qualified as such and took possession of the real property here in dispute, claiming it to be the separate property of her devisor.

The appellant, Frances E. Slasor, then Mrs. Lester, first came to Seattle, in so far as the record discloses, in the year 1900. She had with her some money which she invested in a lot on North Broadway street. On this lot she caused a house to be erected. About a year later she went to Mt. Vernon, where she remained for the following six years, conducting a dress-making business. While at Mt. Vernon she sold the Broadway property and invested the proceeds in other properties in Seattle. From time to time during that period she made like investments, also out of the earnings of her business. During this period her properties in Seattle were managed by one James W. Nolan. He paid the taxes and other assessments levied thereon, looked after the repairs and collected the rentals. Mrs. Lester returned to Seattle in the "winter of 1907 and 1908," and from that time seems to have managed the properties herself until her meeting with Mr. Slasor. After the meeting, Mr. Slasor took an active part in the management of the properties, if, in fact, he did not take upon himself the entire duty.

On June 11, 1909, the appellant executed a general power of attorney to her husband, Joseph M. Slasor, granting him power as her attorney in fact to transact any and all of her business, lease, mortgage, sell and convey her real and personal property, collect rents and other obligations due her. Shortly thereafter the appellant went to Tacoma, in the adjoining county, where she acted as nurse for an aged lady for the following two years. Returning to Seattle, she lived in one of her own houses "until it was rented," when she went again to Tacoma, where she lived until her husband's death. During the latter period she pursued various occupations, such as sewing by the day for others, nursing, and for a time took care of an invalid man for the privilege of a home. She was residing at Tacoma at the time of her husband's death. Her husband's occupation after marriage, as we have said, is not shown, further than he seems to have managed her properties. Acting under the power of attorney, he executed mortgages on each of the properties, and employed an attorney, sued for, and collected a note given to her prior to her marriage by James W. Nolan.

The first of the properties in dispute is described as lot two, in block thirty-seven, of the Supplemental Tract of Hill Tract addition to Seattle. It was formerly owned by one John J. Frantz. Sometime in the year 1907, Nolan, learning the property was for sale, made a deposit of fifty dollars on the purchase price on behalf of the appellant and telephoned her at Mt. Vernon recommending its purchase. The appellant came to Seattle to examine the property and, being satisfied therewith, entered into a contract with Frantz for its purchase, paying three hundred dollars on the contract price in addition to the payment made by Nolan. Thereafter the appellant made, through Nolan,

other payments on the property. After her acquaintance began with Mr. Slasor, he also made payments thereon, but from whose funds it does not appear. Two of such payments were made by check, the one dated October 31, 1908, for $66.12, and the other, January 9, 1909, for $41.40, each signed "J. M. Slasor, Trustee." The last of the payments was made by Slasor sometime in February, 1909. On February 25, 1909, a month prior to the marriage of Slasor with the appellant, Frantz and wife executed a deed to the property in which no grantee was named. The name of the grantee was omitted, so Frantz testifies, at the request of Mr. Slasor, who was representing the appellant's interest, the appellant herself not being present. The deed was recorded on April 2, 1909, at which time it bore the name of J. M. Slasor as grantee, and the recorder's certificate recited that it was recorded at his request. The original deed is in the record. On its face it substantiates the testimony of Frantz. The name of the grantee, while typewritten after the manner of the body of the deed, is written with a typewriter having a different style of type and a different colored ribbon than the typewriting machine first used. The appellant was not permitted to testify whom Mr. Slasor was representing when he made the payments mentioned and procured the deed, nor whose money it was from which the payments were made, but she was permitted and did testify that she never saw the deed, and did not learn that Slasor was named therein as grantee, until after his death. That Slasor had no visible property at the time he first met the appellant, the record also discloses. In the decree of divorce, entered at the suit of the first Mrs. Slasor, he was ordered to pay to her the sum of fifteen dollars per month for the support of the daughter, who is described as mentally defective, until such time as the

daughter should be able to support herself. He paid none of the allowances, and Mrs. Slasor brought an action on the order and obtained a judgment thereon on February 9, 1906, for the sum of $360. This judgment, she herself testifies, she was not able to collect. Testimony was also produced showing declarations made by Mr. Slasor, subsequent to his marriage with the appellant, to the effect that the property was the property of the appellant.

On these facts the trial court found that the appellant and Joseph M. Slasor became acquainted and their relations became intimate in the summer of 1908;

"That they thereafter pooled their business inter-ests, and joined together in all business transactions; that the last payments on said real estate contract were made by Joseph M. Slasor, until the full purchase price thereof was paid."

Finding further that, after the deed was executed,

"Either the plaintiff or the said Joseph M. Slasor, acting with the knowledge and consent of the plaintiff, or some other person acting with the knowledge and consent of the plaintiff, inserted in said deed the name of Joseph M. Slasor as grantee."

As a conclusion of law, the court found the property to be the community property of Joseph M. Slasor and the appellant, decreed it to be such community property, and directed the executrix to administer upon it as such in the administration of the estate of Joseph M. Slasor, deceased.

The second of the above tracts is described as lot 12, in block 74, Plat of Central Seattle, by McNaught, and the third as lot 20, in block 16, Walla Walla addition to the city of Seattle. It is undisputed that these tracts were purchased, paid for, and deeded to the appellant long prior to her acquaintance with Joseph M. Slasor. In September, 1907, the appellant

and James W. Nolan purchased jointly a tract of land in the city of Seattle, not involved in these proceedings. To obtain the money to make the purchase, they borrowed $900 from the American Savings Bank & Trust Company of Seattle. They jointly executed a note for the loan, and to secure it the appellant deeded to the bank the properties described. Both the appellant and Nolan made small payments on the note from time to time, and it was at one time renewed, the balance then due being $420. About this time the appellant desired Nolan to take over the property and assume the liens upon it. This he did. The parties then had a settlement of the accounts between them, in which settlement it was found that Nolan was indebted to the appellant in the sum of $393, and for this sum gave her his promissory note, payable in one year. The appellant thereafter continued her payments on the note, paying all of the balance due thereon, save the sum of $100, prior to her first acquaintance with Mr. Slasor. The remainder of the obligation was paid in three installments, the first, of $24.32, on December 31, 1908; the second, of $74.68, on March 5, 1909, and the last, of $1, on March 20, 1909. The officer of the bank who had charge of the collections did not remember who made the first of these payments, but testifies that the last two were made by Mr. Slasor. After the final payment, the bank redeeded the property. Its records made at the time show that it was deeded to the appellant under her former name of Frances Lester, but the recorded instrument (the original was not produced) names as grantees "Joseph M. Slasor and Frances E. Slasor (formerly Frances E. Lester)." Concerning this deed, also, the appellant testified that she had no knowledge that Mr. Slasor's name appeared therein as grantee until after his death.

As to these properties the court found, as in the

case of the other property, that the parties became
intimate after their acquaintance, contemplated matri-
mony, and joined together in their business interests,
pooling their funds and transacting their business to-
gether; further finding that the appellant had knowl-
edge of the conveyances and the form in which they
were executed, and held the property out to the world
as their joint property. As a conclusion of law, the
court held that the parties owned the property as
tenants in common, each owning an undivided half
thereof. Judgment was entered in accordance with the
findings and conclusions, with costs against the ap-
pellant.

The principal inquiry, therefore, is whether the find-
ings made and the judgments entered by the trial court
are sustained by the facts. Of the findings of fact
common to each of the cases, it may be a just inference
from the evidence that the appellant and Joseph M.
Slasor became intimate, after their acquaintance in
1908, and contemplated matrimony, but clearly there
is no evidence, or inference from evidence, from which
it can be found that they thereafter pooled their busi-
ness interests and joined together in all of their busi-
ness transactions. Indeed, to our minds, the evidence
points to the conclusion that Mr. Slasor was then
utterly impecunious, with nothing to put into the pool.
In addition to the evidence afforded by the decree of
divorce and the money judgment obtained on the order
for allowances, is the evidence that the appellant found
it necessary after her marriage to continue her labors
for her support. Sufficient is shown in the record, also,
to lead to the conclusion that it was the life long habit
of the appellant to transact this part of her business
through the agency of others, and we think it more
reasonable to conclude that, when Mr. Slasor made

payments on the outstanding obligations against these properties, he made them as her agent with her funds, rather than from his own funds or the combined funds of each of them. This conclusion is further borne out by the evidence afforded by the bank checks given in payment of the installments due on the first of the described properties. These, it will be remembered, were signed "J. M. Slasor, Trustee," indicating a bank deposit in that form — a form not uncommon where one deposits in a bank money belonging to another, but exceedingly so where the deposit is the depositor's own fund.

Nor do we find any evidence to support the finding, made with reference to the first of the described properties, that, after the execution of the deed therefor without naming the grantee,

"Either the plaintiff (appellant) or the said Joseph M. Slasor, acting with the knowledge and consent of the plaintiff, or some person acting with the knowledge and consent of the plaintiff, inserted in said deed the name of Joseph M. Slasor as grantee."

On the contrary, the evidence points to an opposing conclusion. The only evidence on the matter is the statement of the appellant to the effect that she did not know that Mr. Slasor's name was inserted therein as grantee until after his death. If the statement be true, then clearly the name was not inserted therein with her knowledge or consent.

The judgment with reference to this tract is erroneous in that it adjudges the property to have been the community property of Mr. and Mrs. Slasor. The property was purchased, paid for, and the deed thereto delivered prior to their marriage. Depending upon other circumstances, it could have been, when acquired, the separate property of Slasor, the separate property of the appellant, or the common property of both of

them; but since the marital relation is essential to impress upon property when acquired a community character, it could have been in no sense their community property. But, if we were to treat the conclusion of the trial court as a finding that Joseph M. Slasor had an interest in the property as a tenant in common with the appellant, we think the finding without foundation. The property was contracted for and a substantial payment made on the purchase price by the appellant long prior to her meeting with Slasor. Between these times, she had paid the remaining part of the price, save a comparatively inconsiderable part. This, when considered with her habit of entrusting this part of her business to others, Slasor's impecuniosity, the manner in which he signed the checks for the payments made by him, and his declarations concerning its ownership, to our minds points unerringly to the conclusion that it was with her funds the purchase price was paid. This being so, the property is hers, notwithstanding Slasor is named in the deed of conveyance as grantee. The respondents, therefore, could acquire no interest therein as devisees under Slasor's will. Had they been purchasers from him for value and in good faith, a different question would be presented, but a devisee can take no greater interest in the devised property than the devisor has to devise.

It is true, as the respondents argue, that some ten years elapsed between the time of the conveyance and Slasor's death and it is not shown that the appellant made any effort to correct the mistake or wrong, if mistake was made or wrong committed. The force of the argument is appreciated, but we think it is met by the facts that the appellant has lived away from the property for almost the entire period, that Slasor, during that period, had had its exclusive management and control, and that the appellant did not know that she

was not the grantee named in the deed until after her husband's death.

With reference to the other properties, we are likewise unable to conclude that the evidence supports the findings made by the trial court. The first of these findings we have sufficiently discussed. As to the second, there is the positive testimony of the appellant to the effect that she did not know that Joseph M. Slasor was named therein as a joint grantee with her. But it would seem that knowledge on the appellant's part of the execution of this deed in the form in which it was executed would not alone have been sufficient to vest a beneficial interest in the properties in Joseph M. Slasor. The property was originally the appellant's property. She deeded it to the bank as security for a loan. When the loan was paid, the bank stood as the holder of the naked legal title to the property, with no beneficial interest in it whatsoever. Having nothing but a naked legal title, a naked legal title was all it could convey. The beneficial interest being in the appellant, the bank, when it conveyed the legal title to the appellant and Joseph M. Slasor, vested no part of such interest in the latter. The title acquired by him through the deed could rise no higher than its source, and consequently could be no more than an interest in the naked legal title. Knowledge on her part that he was named as one of the grantees in the deed, or even consent on her part that he be so named, would not alone vest in him a substantial interest. Before such a result could follow, it must be shown that Joseph M. Slasor acquired from the appellant, the holder of the beneficial interest, all or some part of such interest. This the record not only fails to show, but, to our minds, does show affirmatively that he acquired no such interest.

There is no need to pursue the inquiry. The judgment in each of the causes is reversed, and the causes are remanded with instructions to enter judgment in each of them in favor of the appellant, to the effect that she is the owner of the property there in question and that the respondents have no interest therein.

HOLCOMB, C. J., TOLMAN, MOUNT, and BRIDGES, JJ., concur.