[No. 17044. Department One. November 9, 1922.]

# ROBERT DENNIS et al., Appellants, v. PRISCILLA GODFREY et al., Respondents.[1]

DESCENT AND DISTRIBUTION (13)—REAL PROPERTY—RIGHTS OF HEIRS. Since the administrator had no right to represent heirs, his voluntary appearance in partition proceedings does not bind the heirs, in whom an interest of the property vested on the death of their ancestor, and does not authorize the court to enter default judgment against the heirs.

LIS PENDENS (8-10) — FILING AND EFFECT — SUBSEQUENT PURCHASERS. Rem. Comp. Stat., § 243, providing that a lis pendens, from the time of the filing, shall be constructive notice to "subsequent purchasers" includes persons who subsequently become owners of the property by descent· or devise.

SAME (8-10). Where a partition suit was purely in rem, lis pendens therein binds the heirs· of a party personally served who was in default at the time of her death, and such death, pending suit, does not prevent the subsequent entry of judgment against the land, and it is not necessary to make her heirs or devisees parties to the action.

PARTITION (22)—SALE—RIGHTS AND LIABILITIES OF PURCHASERS. Purchasers of real property at a partition sale are not justified in refusing to consummate the deal by reason of an unsatisfied mortgage shown on the abstract of title, where they agreed to give a reasonable time to cure defects, which contemplated in one instance several months, and thereafter within seventeen days gave notice to rescind, after the release of the mortgage had been secured and filed of record.

APPEAL (394)—REVIEW—AMENDMENT OF PLEADINGS. In the absence of objection to testimony of estoppel on the ground that it had not been pleaded, the supreme court will consider the complaint amended to conform to the proof.

PARTITION (22)—SALE—TITLE OF PURCHASER—LIEN OF MORTGAGE —EVIDENCE. The purchaser at a partition sale whose resale at a profit was defeated by defects in the title is not compelled to consummate the sale where, after delay, the defects were cured too late to benefit him.

[1]Reported in 210 Pac. 507.

SAME (22)—SALE—TITLE AND RIGHTS OF PURCHASER—MARKETABLE
TITLE. The rule that a purchaser at a judicial sale took such title
as is sold, has no application to a partition sale, since the same
is not, strictly speaking, a judicial sale; hence the purchaser can-
not be required to consummate the sale without regard to the title,
especially where the referee making the sale announces that he is
to furnish a marketable title.

Appeal from a judgment of the superior court for
Whitman county, Mills, J., entered July 6, 1921, upon
findings in favor of the defendants, setting aside sales
of land in partition proceedings, tried to the court.
Affirmed in part and reversed in part.

*Pickrell & Stotler, S. R. Clegg,* and *Burton J.
Onestine,* for appellants.

*Burcham & Blair,* for respondents Hall and Hend-
rickson.

*Davis & Heil,* for respondents Martin.

BRIDGES, J.—Francis W. Dennis, a resident of this
state, died in 1917. Upon a settlement of his estate,
the property—consisting for the most part of large
tracts of farm lands—was distributed to about ninety
different persons, most of whom were and are non-
residents of this state. Subsequently, Robert Dennis
and others, being a part of the persons to whom the
lands were distributed, instituted suit in this state
against all the other persons interested in such land,
for partition. Summons in that action was published.
At the time of the commencement of the action, the
plaintiffs filed a notice of *lis pendens,* as provided by
Rem. Comp. Stat., § 243. Subsequently the court made
a decree finding that the lands could not be partitioned,
and directed that they be sold in the manner provided
by statute. This proceeding was had under Rem.
Comp. Stat., § 838 *et seq.* Fred Miller was appointed
referee to make the sale. Thereafter the sale was had

at public auction, and the respondents Hendrickson and wife bid in certain of the lands for $24,400, and paid to the referee ten per cent of that amount. At the same sale, the respondents Martin and wife bid in other of the lands in the sum of $24,090, and paid the referee ten per cent of that amount, and the respondents Hall and wife bid in on other lands in the sum of $6,643, and paid to the referee ten per cent of the amount of the bid.

The bidders, who are the respondents here, contend that, at the time of the sale, the referee announced that title to any and all of the lands purchased was to be marketable, and that he would furnish abstracts in each case showing them to be such. The appellants deny that the referee made any such representations. The lower court found with the purchasers in this regard, and a reading of the testimony convinces us that such finding was correct. These sales took place on the 30th of August, 1920. Within a couple of months, the referee furnished the bidders with abstracts to the titles of the lands purchased by them. All of the purchasers subsequently refused to abide by their bids and demanded of the referee the return of the money deposited with him, on the alleged ground that the titles so furnished were not marketable. Thereafter, on the application of the referee, the court cited the three purchasers to appear and show cause why they should not be required to complete the purchases made by them and to pay the balance of the purchase prices. After a full hearing, the court found the titles to be defective, and relieved the purchasers from further payment, and required the referee to refund to them the various sums which they had paid as a part of their bids. It may be stated here that, at the time of this hearing, all defects of title had been cured. It

is from this judgment or decree that the referee and the plaintiffs have appealed.

We will consider separately the merits of the case as to each of the bidders.

(1) The respondents Hendrickson and wife, after receiving their abstracts of title, delivered them into the possession of their attorneys in Spokane for examination. These attorneys raised certain objections, a part of which are here relied on. In order that we may more fully understand these objections, it will be necessary to state certain additional facts: Mrs. Sarah E. Hanby, a nonresident of this state, was one of the owners of the lands sold, and was one of the defendants brought into court by publication of summons. She owned a 1/60th interest. The sixty-day period for her appearance expired on the 23d day of December, 1919; four months thereafter, and on the 23d day of April, 1920, she died. She did not make any appearance whatsoever in the case, nor, at the time of her death, had any default or judgment been taken against her. She left surviving her four children—two of whom subsequently voluntarily appeared in the action and joined in the request of the plaintiffs for partition; the other two children were never served with any process in the case, nor did they make any appearance. However, before any decree was taken, an administrator of the estate of Mrs. Hanby was appointed and, with permission of the court, he intervened in the action and joined in the request of the plaintiffs for partition. Such were the facts, so far as the Hanby interest is concerned, when the court made its decree finding that it was impracticable to divide the lands and ordering them sold at public auction.

The attorneys examining the abstract for the Hendricksons advised that the title to the lands upon which

they had bid was defective in that two of the children of Mrs. Hanby, deceased, had not been brought into the action, and that the sale could not affect their interest. It was for this reason that Mr. Hendrickson and his wife refused to complete the purchase. The lower court sustained their contention.

When Mrs. Hanby died, her interest in the property descended at once to her four children, subject only to the right of the administrator of her estate to dispose of the property for the purpose of raising money to pay the debts of the estate. Rem. Comp. Stat., § 1366. But the appellant contends that the voluntary appearance by the administrator of the estate of Mrs. Hanby was sufficient to cure any defect there might have been in failing to bring into the case the two Hanby heirs. We cannot support this view. The administrator had no power to represent the heirs. We have so held in a number of cases. In the case of *Hawley v. Bonanza Queen Min. Co.*, 61 Wash. 90, 111 Pac. 1073, we said:

"In actions to foreclose mortgages or liens on real property the owner of the property is a necessary party defendant, and if he dies during the pendency of the action his heirs or successors in interest must be brought in."

In the case of *Anrud v. Scandinavian American Bank*, 27 Wash. 16, 67 Pac. 364, we said:

"Under section 4640, *supra,* the administrator is entitled only to the possession of the real estate, and to sell the same in the course of administration if there is not sufficient personal property to pay the debts of the decedent. There is nothing in the law of 1895, *supra,* indicating that the heir is divested of his estate by the appointment of the administrator. He is not made the representative of the heir in suits affecting the property. The heir can plead payment of the mortgage, or

set up any other lawful defense independent of the administrator.''

See, also, *Sawyer v. Vermont Loan etc. Co.*, 41 Wash. 524, 84 Pac. 8.

But were the appellants, under the circumstances, required to bring the two Hanby heirs into the case? This is the most serious legal question before us.

Section 243, Rem. Comp. Stat., with reference to *lis pendens,* provides that

''From the time of the filing [of the *lis pendens*] only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action.''

The manifest purpose of this statute is to bind all persons becoming in any wise interested in the real estate subsequent to the commencement of the action and the filing of the *lis pendens.* The words ''subsequent purchasers'' must be held to include persons who subsequently become the owners of the property by descent or devise. In fact, in the case of *Phillips v. Thompson,* 73 Wash. 78, 131 Pac. 461, Ann. Cas. 1914D 672, L. R. A. 1918F 599, we have so construed the statute, for we there said:

''The evident purpose of this statute is to bind all unknown heirs and unknown persons or parties who had an interest in the real estate at the time of the commencement of the action; and under the doctrine of *lis pendens,* to also bind all persons who may thereafter acquire an interest or title through them, whether such subsequent interest or title be acquired by voluntary conveyance or by inheritance.''

See, also, 17 R. C. L. 1028.

At the time Mrs. Hanby died, she had been lawfully brought into the partition case. More than the full time allowed after the first publication of the summons had expired. Indeed, she had been in default for nearly four months. The proceeding was one strictly *in rem*. No personal judgment was sought or could have been obtained. The appellants were entitled to take a decree against Mrs. Hanby long before she died. By the service upon her, the court had acquired jurisdiction of the subject-matter of the cause, and also of Mrs. Hanby, sufficient for the purposes of this action. Such being the case, her heirs took title to the land, subject to all the rights which the appellants had acquired against her, which was nothing more nor less than the right to a decree. Doubtless, those heirs would have had a right to intervene in the action at any time before default or decree was taken, but there was no duty devolving upon the appellants to bring them into the case or to serve process upon them. The very purpose of the statute with reference to filing a *lis pendens* is to cover circumstances like those existing here. If the decree had been taken before Mrs. Hanby died, no one should question the right of the referee to make the sale after her death, and that her heirs would be bound. The mere delay of the plaintiffs to take the judgment to which they were entitled cannot alter the situation. It may be conceded that a judgment should not be taken against a dead person. But that was not done here; the judgment was against the land and not against its owners.

A very different question would arise had not Mrs. Hanby been served with process before she died, or had she not been in default for want of appearance at that time. There is no need here for us to inquire into that state of facts.

Although this case has been elaborately briefed, we have not been cited to any authority—nor have our researches discovered one—which is at point on the facts here, or, for that matter, any case which throws very much light upon the question.

We hold that the heirs of Mrs. Hanby, deceased, were, under the circumstances related, bound by the decree entered by the court in the partition suit, and that it was not necessary that the plaintiffs in that action should make them parties thereto. Since the question we have discussed is the only alleged defect in the title to the property purchased by Hendrickson and wife which is now relied on, it must follow that the title to their property was good, and they are, in law, required to complete their purchase.

(2) We will now consider the case from the standpoint of Mr. Martin and his wife. They made the same objections to the title that were made by Hendrickson and wife, and what we have said in regard to the Hanby heirs will equally apply to them.

But they made a further objection; that there was an old, unsatisfied mortgage against the lands purchased by them. In the briefs this mortgage has been referred to as the George B. Boies mortgage. It was dated January 5, 1894, and was given to secure a sum in excess of $1,600. Sometime in October of 1920, the referee delivered to Mr. Martin an abstract covering the title to the property purchased by him, which abstract was by him put into the hands of his attorneys for examination. On November 9 of that year, they gave a written opinion to Martin, which was by the latter given to the referee, pointing out a number of defects in the title to the property purchased and suggested that they be corrected. Among the rest was the failure to bring into court the Hanby heirs, and also

the unreleased Boies mortgage. The attorneys required that this mortgage be released, and that deeds be obtained from the Hanby heirs. The referee proceeded to cure a number of the objections made to the title, and then procured the abstract to be brought down to date and again delivered it to Martin and his attorneys, and on January 17, 1921, the attorneys gave another opinion in which they found that the Boies mortgage had not been released and insisted that such be done. They also found that their objections concerning the Hanby heirs had not been cured or corrected, and in that connection stated that, within a reasonably short time, the Hanby estate could be settled and the heirship adjudged, and deeds obtained from the two heirs who had not appeared in the partition case. This opinion was delivered into the hands of the referee or his attorneys. On the 15th of January a release of this mortgage was executed by Mr. Boies, in California. It was filed for record February 3, and on January 26 the Martins, not knowing that the release had been obtained, gave notice that they would not complete their purchase, and demanded the return of the deposit of money made with the referee at the time of the sale.

Under these circumstances, were the Martins justified in repudiating their purchase because of the Boies mortgage? We think not. Without doubt, the attorneys representing the Martins were entirely justified in refusing to pass the title till this mortgage was released. While it was very old, it was not impossible that it was still a lien against the land. As late as the 17th of January, the Martins led the referee to believe that they would accept the title as soon as a release of this mortgage had been obtained and the settlement of the Hanby estate was made. By their conduct they

gave the referee a reasonable time within which to do these things. Notwithstanding this situation, only nine days after their letter of the 17th of January, and without any previous warning, and after release of the mortgage had been obtained, they gave notice that they refused to complete their purchase. It seems to us that the equities are against them. The fact that they were demanding the settlement of the Hanby estate, which they knew could not be done until after the first of February, strengthens the conclusion to which we have come, for it should be noted that, while the referee and his attorneys contended that there was no defect in the title on account of the Hanby heirs, yet they were willing to comply with the wishes of the Martins, and, in fact, before this matter was heard by the trial court, that estate had been settled and deeds obtained from the heirs who had not appeared in the partition action. But it is said that our holding amounts to an estoppel, and that proof of estoppel is inadmissible unless the estoppel be pleaded, which was not done in this case. In the first place, it has not been called to our attention that any objection was made to the receipt of this character of testimony, and in the absence of such objection we will consider the pleadings amended so as to plead estoppel. But the doctrine of estoppel is not involved. The referee had a reasonable time within which to make the title good, and this testimony only goes to determine what, under the circumstances, was such reasonable time.

(3) The Halls did not have any attorney examine their abstract. It appears that, shortly after they purchased the property at the sale, they entered into an agreement with another man whereby they sold him, at something of a profit, their rights to receive a deed from the referee. For at least several weeks

after the abstract was presented to them, the title to
their land was defective in a number of respects, most
of which were subsequently cured in complying with
the objections made by the Hendricksons and the Mar-
tins.  It appears, also, that the Boies mortgage did
not cover their land, but there was another mortgage—
known in the record as the Colwell mortgage—which
was against the Hall land and which was unsatisfied.
It appears that this mortgage was subsequently sat-
isfied, but we are unable to learn from the record or
the briefs when such satisfaction was made.  The per-
son to whom the Halls had sold their interest refused
to take the property because of what they claimed
were defects in the title.  It seems clear from the
record that this Colwell mortgage, together with cer-
tain other defects which were later cured, defeated
the sale which Hall had made to the other party.  At
a conference in January of 1921, between Hall and
the referee and his attorneys, the question of this
mortgage was brought up, and the referee, or his
attorneys, stated that that mortgage had been satis-
fied, but in answer thereto, Hall stated: "Yes; but
the thing of it was it was not cleared up in time;
it was on there along in November; it knocked me
out of my profit.  I was turning that land for a thou-
sand dollars profit and the fact was your mortgage
was against it, and it knocked my deal out."  The
Halls had done nothing to extend the time for furnish-
ing a good title, and, under the circumstances, it seems
to us they were in position, at all times, to refuse to
take the title if there were any material defects in it.

We realize that there is much evidence to contradict
our view of the Hall testimony, but the view we have
taken seems to be that taken by the trial court, and
since he heard and saw the witnesses we are not dis-
posed to disagree with his conclusions in this regard.

(4)   The referee contends here that the purchasers were bound to take such title as was sold, and if it was not marketable, he was not required to make it so. There are many authorities which hold that a purchaser at a judicial sale takes just such title as is sold, and if he discover a defect therein, he is not entitled to refuse to consummate the purchase.   There are also many authorities holding to a contrary rule.   However, the rule in judicial sales (whatever it may be) is not necessarily the rule in a sale made in partition proceedings, for the latter is not, strictly speaking, a judicial sale.   At page 1209, 21 Am. & Eng. Ency. Law (2d ed.), it is said:

"A purchaser at a sale for partition has a right to demand a title to the premises which is free from all reasonable objections, and marketable, lacking which he may rescind the purchase.   There is some conflict of opinion as to the character of a sale for partition and the application thereto of the principle of *caveat emptor*.   One doctrine holds that such sales are at the risk of the purchaser, and made without any implied warranty of title, the other, more modern, and growing view is that such a sale is not *in invito*, but is simply a mode of sale by the parties themselves in which, if there be no good title, the purchaser has the same equity against being compelled to complete his purchase as if the contract had been without the intervention of the court."

At page 779, 20 R. C. L., the rule is stated as follows:

"In many jurisdictions the rule prevails that on a sale of land in proceedings for partition, the court does not undertake to sell more than the title of the parties to the suit, and the doctrine of caveat emptor applies to such a sale, the purchaser taking at his own risk as to the title, in the absence of any express warranty or representation.   The purchaser at a sale under a decree in a partition suit acquires only the title which the parties to the suit had.   .   .   .   In

other jurisdictions it is held that the doctrine of caveat emptor does not apply to partition sales. The officer making the sale is considered to be the agent of the parties to the action and, consequently, his representations are held to be binding on them. Such a sale is held to be but a mode of sale by the parties themselves. It is not merely a sale by the law, in invito, of such interest as the party has or may have, in which the rule is caveat emptor, but professes to be a sale of a particular estate, stated in the pleadings to be vested in the parties, and to be disposed of for the purpose of partition only."

At page 121, 16 R. C. L., speaking of judicial sales, it is said:

"However, in its modern application to judicial sales, the rule of caveat emptor has been somewhat relaxed; and it is now generally conceded that a purchaser at a judicial sale is entitled to expect and to obtain a sound and marketable title to the property sold."

In *In re Box's Assignment*, 11 Wash. 90, 39 Pac. 240, we held that a purchaser at an assignee's sale may demand a perfect title, and that he cannot be compelled to take the land purchased when he would thereby be put to expense to clear the title.

In a proceeding of this character it would be very unfair and inequitable to require a purchaser to consummate his sale without regard to the title which he is to receive; and particularly would it be so where, as here, the referee making the sale announces that he is to furnish a marketable title.

The judgment appealed from is reversed as to Hendrickson and wife and Martin and wife, and affirmed as to Hall and wife, and the cause is remanded to the lower court to proceed in accordance with this opinion.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.