[No. 19389. Department Two. January 4, 1926.]

*In the Matter of the Estate of* MARY TAYLOR PETERSON, *Deceased.*

NEAOLA TAYLOR HIGGINS, *Petitioner and Appellant,* v. L. A. PETERSON *et al., Respondents.*[1]

[1] EXECUTORS AND ADMINISTRATORS (1)—NECESSITY OF ADMINISTRATION. The appointment of an administrator twenty-seven years after the death of the deceased is properly refused where there was in existence no real or personal property belonging to the deceased, and the rights of creditors were not involved.

[2] SAME (1). In such a case there is no necessity for the appointment of an administrator to enable a daughter to enforce her rights against the heirs of deceased's husband, growing out of business relations with him after the mother's death; the superior court having jurisdiction thereof, and of proof of heirship, without probate proceedings.

Appeal from a judgment of the superior court for King county, Carey, J., entered January 3, 1925, upon findings in favor of the defendants, refusing to appoint an administrator, after a hearing to the merits. Affirmed.

*Vince H. Faben* and *Wm. Martin,* for appellant.

*James C. McKnight,* for respondents.

MITCHELL, J.—This is an appeal from an order of the superior court of King county refusing to appoint an administrator of the estate of Mary Taylor Peterson, deceased. The decedent by her first husband, C. W. Taylor, had two children, Neaola Taylor and Charles A. J. Taylor, and by her second husband, Lars Peterson, she had one child, Lars Albert Peterson, all of which children still survive. Mary Taylor Peterson died in Seattle in 1898. Lars Peterson died in 1924,

[1]Reported in 241 Pac. 964.

whereupon his son Lars Albert Peterson was appointed administrator of his estate. Thereupon Neaola Taylor Higgins, formerly Neaola Taylor, filed a petition for the appointment of an administrator of her mother's estate. In her petition she alleged the death of Mrs. Peterson in King county in 1898, intestate, leaving both real and personal property and giving the names and addresses of her heirs at law. Her brothers filed an answer resisting the petition. On the trial of the case, the court found:

"That the said Mary Taylor Peterson died in Seattle, King county, Washington, on the 19th day of March, 1898; that at the time of her death she left surviving her her husband, the said Lars Peterson, now deceased, and petitioner Mary Taylor Higgins, now aged 49 years, C. A. J. Taylor, now aged forty-four years, and the said L. A. Peterson, now aged forty years, the last three named persons being her only children; that she left no will; that there is now no tangible property of the said decedent in existence; that there has been laches in making application for administration upon her estate; and that there is now no necessity for the appointment of an administrator or administratrix of said estate and that said petition should be denied.''

Upon these findings an order was entered denying the petition, from which Mrs. Higgins has appealed.

It appears that, in the stringent times of the early nineties, the Peterson family was not free from the prevalence of necessitous circumstances. They purchased and operated a small restaurant called the California Oyster House. It was run in the name of Neaola Taylor. On behalf of the appellant, the testimony showed that she owned an interest in the business with her mother, who furnished the money, amounting to some three or four hundred dollars, to buy the business and that both of them engaged in conducting it,

while Mr. Peterson gave it no attention. On the contrary, it was shown on behalf of the respondents that Mr. Peterson purchased the business and put it in the name of the appellant because of his embarrassed financial condition with creditors, and that he did give a portion of his time to the restaurant business. After the death of Mrs. Peterson in 1898, the business was still conducted in the name of the appellant until her marriage in 1904. The personal property tax rolls showed that the restaurant property was assessed to Neaola Taylor in 1899, valued at $150, and that the tax was paid by Lars Peterson. It was assessed to him for the years 1900 to 1905, both inclusive, except the year 1901 when it was not assessed at all. Lars Peterson operated the restaurant, after the marriage of the appellant, until 1911. It is uncertain if anything more than a living for the family was made prior to the death of Mrs. Peterson. They did not own a home. After her death, it seems that the business prospered and continued to do so until he ceased to run it and that, out of the profits, he purchased considerable property. The appellant testified as follows:

"Q. You never claimed any interest in that place [restaurant] after 1904, did you? A. Well, I had this much interest in it, that I always expected to get what was coming to me out of it."

[1] These are substantially the facts upon which the appellant seeks the appointment of an administrator of her mother's estate, twenty-seven years after her mother's death. There was no evidence that, at the time of the hearing in this case, there was then in existence any real or personal property belonging to Mrs. Peterson or in which she was interested at the time of her death. It is not claimed that any right of a creditor is involved. After so long a time, without any petition

for administration having been filed, it is presumed in favor of the child either that there were no community debts or that they have been paid or barred. *Hill v. Young,* 7 Wash. 33, 34 Pac. 144.

[2] But it is insisted on behalf of the appellant that the appointment of an administrator of her mother's estate is needed that she may enforce her rights against the Lars Peterson estate. Certainly it is not necessary, in the enforcement of any right growing out of her relations with Lars Peterson in their conduct of the business together after her mother's death, or the manner of her turning it over to him upon her marriage in 1904. Such a right, if one exists, may be enforced by a proper proceeding in the administration of his estate or by an original suit against the proper parties interested in his estate, as the circumstances may warrant.

On the other hand, so far as her rights as an heir at law of her mother are concerned no appointment is necessary. The superior court, sitting otherwise than in probate, has the power to determine heirship, as much so as a probate court, and as stated in Woerner's American Law of Administration, § 201, quoted in *Murphy v. Murphy,* 42 Wash. 142, 84 Pac. 646,

" 'The rights of creditors to the assets of a deceased person is the principal reason for requiring official administration, and courts, therefore, sanction the disposition of the property of a decedent without the appointment of an administrator where it is certain that no debts are owing.' "

If, under such circumstances, the property cannot be disposed of amicably and there is necessity for litigation, it may be waged directly by an interested party without the intervention and consequent expense of a formal administration. This doctrine is not without former expression in our own cases.

In *Duvall v. Healy Lumber Co.,* 57 Wash. 446, 107

Pac. 357, 109 Pac. 305, in discussing the question as to whether there existed a necessity for the administration of an estate thirteen years after decedent's death, we said:

"Under these statutes it is plain that there is no necessity for an administration of this property. There are no debts to which it can be subjected, and the title is fully vested in those who are rightfully entitled thereto. If it should be delivered over to the administrator he could do nothing more than deliver it back to those rightfully entitled to it burdened with the costs of administration caused solely by his interference. If there is any controversy by the heirs of the appellant's deceased wife and the respondent over the title or right of possession of the property, that controversy can better be settled by an action directly between the parties than it can in a proceeding brought to administer upon an estate. Where a contest over the ownership of property arises when an attempt is made to distribute property administered upon, which has been properly subjected to an administration, it is proper, of course, to determine the controversy in the administration proceedings, but such a controversy cannot, of itself, give rise to the necessity of an administration. These principles we think are sustained by the cases of *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765; *Anrud v. Scandinavian-American Bank,* 27 Wash. 16, 67 Pac. 364, and *Murphy v. Murphy,* 42 Wash. 142, 84 Pac. 646."

The findings of the trial court are supported by a preponderance of the evidence. The conclusion and order that the appointment of an administrator was unnecessary were proper.

Affirmed.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.