[Nos. 21424, 21511.   *En Banc.*   February 21, 1930.]

WASHINGTON TRUST COMPANY, *Appellant,* v. J. B.
BLALOCK, *et al., Respondents,* SHIRL H. BLALOCK,
*as Executor, Appellant.*

J. B. BLALOCK, *Intervener, Appellant,* v. FLOYD M.
BROWER *et al., Respondents.*[1]

[1]Reported in 285 Pac. 449.

*W. W. Clarke* and *C. C. Lantry,* for appellant.

*O. C. Moore,* for respondents.

Fullerton, J.—The causes above entitled, while involving separate judgments from which separate appeals were taken, have common parties, and present the same ultimate question. They were, for that reason, ordered consolidated for the purpose of hearing in this court, and can best be considered in one opinion.

The facts in the main are undisputed. In the years 1907 and 1908, J. B. Blalock and his then wife, Martha H. Blalock, purchased all, of the capital stock, one hundred shares, of a corporation called in the record the W. & B. A. Investment Company. The corporation owned certain real property situated in the city of Spokane on which there was an apartment building, the conducting of which was the principal business, if not the only business, of the corporation. After the purchase was completed, the certificates evidencing the shares purchased were surrendered to the corporation and new certificates issued, one representing forty-nine shares to J. B. Blalock, one representing forty-nine shares to Martha H. Blalock, and one representing two shares to Shirl H. Blalock, who is the son of J. B. and Martha H. Blalock.

The shares were held in this manner without change until March 11, 1927, when Martha H. Blalock died. Mrs. Blalock left a will in which, after making certain minor bequests, she bequeathed to J. B. Blalock all the remainder of her estate. She named her son Shirl H. Blalock as the executor of her will, and he qualified as such. In the inventory of the property of the estate, the executor listed certain of the property of which Mrs. Blalock died seized as her separate property, and the remainder as the community property of Martha H. and J. B. Blalock. Among the property listed as

community property, were the shares of stock in the W. & B. A. Investment Company held in the name of J. B. Blalock. The separate property was appraised at $1,867.84, and the community property, after deducting a mortgage on the land and building given by the W. & B. A. Investment Company, at $35,663.50.

On September 14, 1922, the Washington Trust Company obtained a judgment against J. B. Blalock for some $1,200 on a note which Blalock had executed as surety for another. The judgment was his separate debt, and could be executed only upon his separate property. After the death of Mrs. Blalock, the judgment creditor caused a writ of execution to be issued on the judgment, which writ was returned wholly unsatisfied. The judgment creditor thereupon applied to the court for an order supplemental to the execution, requiring J. B. Blalock and Shirl H. Blalock to appear and answer concerning any property they might own or hold subject to be applied to the satisfaction of the judgment. The court issued the order, and the parties summoned appeared and submitted themselves to examination. At the hearing it was not disclosed that the judgment debtor owned any property other than his interest in the estate of Martha H. Blalock. The court thereupon entered an order dismissing the proceedings, finding that no property had been discovered applicable to the payment of the judgment.

Later on, by a *nunc pro tunc* order, the court amended the finding to the effect that no property had been discovered applicable to the payment of the judgment which was not known to the judgment creditor prior to the institution of the proceedings, "and which property, if any, could not, at and prior to the time said supplemental proceedings were instituted, have been levied upon by the" judgment creditor, and reaffirmed the order of dismissal. It is from this order

that the first of the appeals above mentioned is prosecuted.

After the entry of the amendatory order mentioned, the judgment creditor issued another execution on its judgment, caused it to be levied upon the interests of J. B. Blalock in the estate of Martha H. Blalock, and was proceeding to sell such interest when the second of the actions was instituted as an action of equitable cognizance to restrain and enjoin the sale. Issue was taken on the complaint and a trial was had resulting in a judgment of dismissal. The second appeal is from this judgment.

We have not been able to agree with the trial court in his conclusions in either proceeding, even treating them as independent proceedings. In the supplementary proceeding, we think there was much discovered that was not known to the applicant for the writ prior to the time it was sued out. The appellant knew at that time, of course, that the estate had property of a considerable value, and that its judgment debtor, in virtue of his community interest in the property and as its residuary legatee, apparently had an interest therein of value. But it did not know whether this apparent value was actual or nominal, or whether, if actual, the judgment debtor had retained his interest in it.

The interests of the judgment debtor could be taken in their entirety to satisfy the debts of the estate, and the judgment debtor could have parted with his interests by assignment, in either of which events there would be nothing which it could levy and sell. The supplemental examination disclosed the actual situation; it disclosed the indebtedness of the estate and disclosed that the judgment debtor had not parted with his interests therein, and that there would be property

of large value coming to him when the estate was ready for distribution. These are matters which it is the very purpose of supplementary proceedings to disclose, and we think the court was in error in dismissing the proceedings for the reason given.

In the second cause of action, certain equitable features were presented which will appear later, and which, we think, do not warrant a levy and sale of J. B. Blalock's interest in the estate in the manner attempted.

On the first appeal, the appellant makes a contention which must be separately noticed. It contends that the court erred in refusing to direct the executor of the estate to turn over to the sheriff for sale the shares of stock standing in the name of J. B. Blalock. This claim of error is founded on the further contention that the shares of stock were the separate property of J. B. Blalock and not subject to administration in the estate of Martha H. Blalock. But we cannot think the evidence justifies the conclusion that he had more than a community interest in the shares. The evidence on the question is somewhat meager, but such as appears in the record shows that the shares were acquired during coverture, and were paid for in part by the separate funds of Martha H. Blalock and in part by the community funds of the husband and wife. The presumption arising from these circumstances would indicate that the property became in part the separate property of Martha H. Blalock and in part the community property of herself and J. B. Blalock.

But, however, this may be, certainly there is no presumption that any part of it became on its purchase the separate property of J. B. Blalock. The original certificates of stock purchased, it is true, were surrendered and new certificates issued by which the shares were equally divided between the husband and

wife, but this alone does not warrant the conclusion that it was the intent of the husband and wife to divide the property between them and thereafter hold the property as separate property.

In this state title to community property may be taken in the name of either spouse, in the names of both of them, or in part in the name of one and in part in the name of the other, without affecting its character as community property. The name of the spouse in whom the title is taken may have a bearing where there is a dispute between the spouses as to the nature of the title, but it is only a circumstance to be considered with the other evidence on the question; it is never in itself conclusive. In this instance, all of the evidence, aside from the circumstance mentioned, is to the effect that the property has been at all times held and treated by both spouses as community property. We conclude, therefore, that the judgment creditor was not entitled to this part of the relief demanded.

The further contention, namely, that enough was shown at the hearing to warrant the court in making some form of order which would subject the interests of J. B. Blalock in the estate of his former wife to the satisfaction of the judgment against him, is of more moment. As we have before stated, the evidence at the hearing developed the fact that he had a valid and subsisting interest in the estate, and that, at the close of the administration, a considerable property would be distributed to him or his representatives; more than enough, at least, to satisfy the claim of the judgment creditor. No order could have been made, of course, which would affect the orderly administration of the estate, or the rightful claims of the creditors of the estate, or the claims of the devisees, other than the judgment debtor, in so far as their devises were payable out of that part of the property of the estate

which the testatrix had the power to devise. But we, see no reason why some form of order could not have been made which would subject the judgment debtor's interest to the payment of his debt.

It is said that such an order cannot be made in this form of proceeding. But proceedings supplemental to execution are of equitable cognizance, and in the nature of a creditor's bill (*Murne v. Schwabacher Bros. & Co.,* 2 Wash. Terr. 130, 3 Pac. 899; *Mears v. Lamona,* 17 Wash. 148, 49 Pac. 251; *Klepsch v. Donald,* 18 Wash. 150, 51 Pac. 352); and where there is no adverse claim to the property by strangers to the action, the court may, in such a proceeding, make such orders with respect to it as the evident justice of the case requires. (*Smith v. Weed,* 75 Wash. 452, 134 Pac. 1070).

The judgment in the second action is erroneous, we think, because it permits the judgment creditor to sell the interests of the judgment debtor in the estate under a general execution. This, as we pointed out in *Mears v. Lamona, supra,* would be inequitable, as it might result in the sacrifice of a valuable interest for a comparatively nominal consideration; an injustice which the judgment debtor might be powerless to prevent. But, as we there further pointed out, the court has power to protect both of the parties; it has the power to postpone the sale until such time as the estate is ready for distribution and direct that the interests of the judgment debtor therein be then delivered to the proper officer for sale in satisfaction of the judgment, and power to make such necessary orders as will protect the property against sale or incumbrance by the judgment debtor pending the delay.

It is our conclusion that an order of the nature outlined in the cited case should be entered in the present proceedings. This will require a consolidation of the actions in the court below, and an entry of a single

judgment in the consolidated action. The form of the judgment we shall not direct. This can best be determined by the trial court which will have the parties before it. Our order is, therefore, that each of the judgments be reversed and the causes remanded with instructions to consolidate them and to enter a judgment in the consolidated action in conformity with the conclusions above outlined.

All concur.

[1]Reported in 285 Pac. 442.