[No. 25289.   Department Two.   December 10, 1934.]

THE NATIONAL BANK OF COMMERCE OF SEATTLE,
*Respondent and Cross-appellant,* v. L. A.
PETERSON, *Appellant.*[1]

*James C. McKnight,* for appellant.

*Kerr, McCord & Carey,* for respondent and cross-appellant.

HOLCOMB, J.—On September 20, 1924, Lars Peterson died in Seattle leaving an estate, the real property of which was appraised at $224,500 and the personal property appraised at $18,512.05, totalling $243,012.05. At the time of his death, there were mortgage and

[1] Reported in 38 P. (2d) 361.

contract indebtednesses against the property in the sum of $63,028.36.

Notice to creditors was published October 7, 1924. The following claims were filed: Seattle National Bank, on a promissory note, unsecured, for $6,000; C. A. J. Taylor, unsecured, for $1,500; and Bonney-Watson Co. for funeral expenses, unsecured, for $2,800. These were allowed and fully paid by the administrator, L. A. Peterson. A claim for $234,666.66 by Neola Taylor Higgins was rejected by the administrator, was sued upon, the rejection sustained, the cause appealed and affirmed by this court on February 7, 1929. *Higgins v. Peterson,* 150 Wash. 620, 274 Pac. 186. In that and a preceding case, *In re Peterson's Estate,* 137 Wash. 137, 241 Pac. 964, L. A. Peterson was successful in substantiating himself as the son and sole heir of Lars Peterson, and the claim of Neola Taylor Higgins for the whole estate was defeated.

On February 3, 1925, L. A. Peterson personally borrowed from the National City Bank of Seattle five thousand dollars, and secured his note by a warranty deed in which he declared himself a bachelor and sole and only heir at law of Lars Peterson, deceased, conveying the east one-half of lot two and the north one-half of lot three, in block sixty-two of A. A. Denny's Fifth Addition to the city of Seattle, according to the recorded plat thereof. The original note was renewed from time to time, the last renewal being on July 28, 1930.

On September 29, 1925, L. A. Peterson and defendant T. W. Wade executed and delivered to the National City Bank their joint and several promissory note for six thousand dollars, which note was subsequently renewed, the last renewal being on June 17,

1930. Both notes are long past due, and no interest has been paid on either since 1930.

On September 23, 1931, the judge then sitting as probate judge made an order allowing the attorney for the administrator a fee of twenty-five thousand dollars in addition to an allowance of one thousand dollars made when the administrator's first report was approved, and allowed a like sum to L. A. Peterson, as administrator of the estate. This hearing was *ex parte,* and both the administrator and his attorney knew that the state inheritance tax had not been adjudged and paid. The administrator paid the Federal inheritance tax several years ago, but has never completed his report to the state inheritance tax department. All other steps in the administration of the estate were practically completed in 1929 or 1930.

This action was brought to recover judgment against L. A. Peterson, individually, and also as administrator, and T. W. Wade, as a co-signer of one of the notes, for judgment for the balance due on both of them; to have the deed mentioned above declared a mortgage and a first and paramount lien against the property therein described prior to the claim of each and all of the defendants herein; that it be foreclosed as a mortgage and a decree entered directing a sale of the property in mortgage foreclosure proceedings, free and clear of all right, title and interest of any of the defendants named herein; and for such other and further relief as may be meet and equitable.

A trial resulted in a judgment in favor of respondent against L. A. Peterson on each note. The deed was declared to be a valid mortgage upon any interest of his in the property mortgaged, but provided that L. A. Peterson, as administrator, could re-

tain possession of the real estate until the estate was closed and a decree of distribution duly entered. The mortgage was declared to be inferior to the right of the administrator to sell the property to pay the expense of administration, including all allowances made to the attorney for the estate. The decree also provided that the interest of L. A. Peterson, as heir at law, subject to the right of the administrator and the state of Washington, should be sold and the proceeds applied upon the satisfaction of respondent's judgment. The decree further gave respondent judgment against L. A. Peterson and T. W. Wade for six thousand dollars, but decreed that this portion of the judgment was not secured by the deeded property. A very material portion of the decree is:

"And that nothing herein shall be so construed as to interfere with the orderly administration of the estate of the said Lars Peterson, deceased, or prevent the plaintiff from exercising any right that it may have in the matter of the estate of Lars Peterson against said administrator thereof or his attorney, James C. McKnight, in any other proper action or forum. This decree to be without prejudice to the right of plaintiff, if any, to require an accounting of the administration."

Peterson has not appealed as administrator, but appeals as an individual only. Respondent has also taken a cross-appeal from the decree of the court, but will be mentioned herein only as respondent.

There is little conflict in the facts, and what there is was resolved by the trial judge, upon competent evidence, in favor of respondent.

Appellant emphasizes certain findings made by the trial court, in his effort to reverse the decree, to fit our decisions in *Mears v. Lamona,* 17 Wash. 148, 49 Pac. 251, and *Washington Trust Co. v. Blalock,*

155 Wash. 510, 285 Pac. 449. Extended quotations are made in the briefs from the above mentioned cases, which are inapplicable to the conditions existing in this matter to support his contention.

In the *Lamona* case, *supra,* the decree provided that the interest of Lamona was subject to his creditor's claim, and that so much of his interest in the estate as might be necessary should be sold by the executors, *within sixty days.* That case was one arising during the calamitous depression of the early nineties, and it was obvious that to sell the estate within sixty days would be most inequitable. Accordingly, we held that Lamona had the right to sell his interest in the estate, which was an expectancy under a will, at any time, and it could be sold provided he could find a purchaser, but doubted whether a creditor should be given that right under the circumstances. We directed that the interest of both parties be protected, because appellant Lamona was willing to pay his debt and simply asked that the sale be postponed until such time as the estate should be reduced to possession, at which time tangible property could be sold and presumably bring its market value.

In the *Blalock* case, *supra,* which was a supplementary proceeding by a creditor against an executor, as such, and against a devisee, we referred to the *Lamona* case, *supra,* and two others, and held:

"This, as we pointed out in *Mears v. Lamona, supra,* would be inequitable, as it might result in the sacrifice of a valuable interest for a comparatively nominal consideration; an injustice which the judgment debtor might be powerless to prevent. But, as we there further pointed out, the court has power to protect both of the parties; it has the power to postpone the sale until such time as the estate is ready for distribution and direct that the interests of the judgment debtor therein be then delivered to the proper officer for sale in satisfaction of the judgment, and power to make

such necessary orders as will protect the property against sale or incumbrance by the judgment debtor pending the delay.''

We also there stated:

''No order could have been made, of course, which would affect the orderly administration of the estate, or the rightful claims of the creditors of the estate, or the claims of the devisees, *other than the judgment debtor,* in so far as their devises were payable out of that part of the property of the estate which the testatrix had the power to devise. But we see no reason why some form of order could not have been made which would subject the judgment debtor's interest to the payment of his debt.'' (Italics ours.)

The trial court found that the deed was intended by the parties to be a mortgage. The expectancy interest of L. A. Peterson could be either sold or mortgaged. It is not to be considered as a part of the estate, for which it was necessary to procure an order to sell or mortgage, under our probate statute.

Under our statutes, Rem. Rev. Stat., §§ 1366 and 1367 [P. C. §§ 9863, 9864] real property vests immediately in the heirs subject to the ancestor's debts, expenses of administration, and other charges for which the real property is liable. Such title carries the right to possession, and is valid as against all persons except those claiming under an executor or administrator. Section 1367, *supra,* confirms the title of all heirs and devisees, and their grantees, to real property conveyed by heirs.

Appellant now makes the astonishing claim that he has not been determined to be the sole heir of Lars Peterson, deceased. He asserted that position in the two cases in which he was involved, in 137 and 150 Washington, heretofore mentioned. He pledged the land described in the complaint for an indebtedness voluntarily incurred, and declared himself to be the

"sole and only heir at law of Lars Peterson, deceased."

It does not lie in his mouth now and he will not be heard to say in this case that he is not such heir. Under our statute and decisions, he had an interest and expectancy in the estate of Lars Peterson, deceased, which he could convey or mortgage if, as it was said in the *Lamona* case, *supra,* he could find any one who would accept it. This he did about nine years ago, and has never paid the indebtedness.

As to the cross-appeal of respondent, it will be noted that the portion of the decree heretofore quoted closely conforms to the procedure directed in the *Lamona* and *Blalock* cases, *supra.* The decree on the cross-appeal will therefore be affirmed.

In passing, we wish to observe that our probate statute, Rem. Rev. Stat., § 1517 [P. C. § 9885], makes it the duty of every administrator to settle the estate in his hands as rapidly and as quickly as possible without sacrifice to the estate. We are powerless, as the trial judge in this case probably also felt, to compel more speedy action on the part of the administrator, as directed by the statute, within any specified time. He seems, however, to have been managing the estate as if he were the sole owner, or at least under a nonintervention will giving him sole authority. This last is, of course, not true. There seems to be no reason why the estate should not be settled.

It follows from what we have said that the decree is in all respects affirmed, on both appeals. Respondent will recover costs in the court below and here.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.