[No. 30872-6-I.   Division One.   July 26, 1993.]

THE CITY OF BELLEVUE, *Appellant*, v. CASHIER'S CHECK FOR $51,000 & $1,130 IN U.S. CURRENCY, *Defendant*, HOWARD P. PRUZAN, *as Personal Representative, Respondent*.

698

*Richard L. Andrews, City Attorney,* and *Ruth Evelyn Darden, Assistant; John Martin* and *O'Shea, Straight, Barnard & Martin,* for appellant.

*Reba Weiss* and *Steinborn & Associates,* for respondent.

COLEMAN, J. — The City of Bellevue appeals the trial court's order of summary judgment, arguing that (1) the illegal use of property by the personal representative[1] and sole beneficiary subjected the property to the state forfeiture statute, and the estate should not be permitted to assert the innocent owner defense, (2) the successor personal representative, who was appointed after the crime was committed, did not have standing to assert the innocent owner defense, and (3) the creditors of the estate should not be paid with property that is subject to the forfeiture statute. We affirm.

Lula Belle Anderson died in January 1991. The primary asset of her estate was a home located in south Seattle. In early February 1991, Anderson's son, Alfred Williams, consulted Howard Pruzan, an attorney, regarding the probate of the estate and the sale of the house. Because Williams believed that Anderson left no will, Pruzan made arrangements to have Williams appointed personal representative of the estate. Also at that time, Williams presented Pruzan with a real estate purchase and sale agreement that he had negotiated for the home.

After a title search revealed three outstanding mortgages on the home, Pruzan, with Williams' approval, initiated a quiet title action. Shortly thereafter, Pruzan was informed that Anderson's will had been located. The will named Robert Willis as executor and Williams as sole beneficiary. On June 12, 1991, an order was entered confirming Willis as executor of the estate.

The quiet title decree was issued on June 13, 1991, and the house was sold soon thereafter. Williams received net proceeds totaling $62,092.20. He converted a portion of the proceeds into a cashier's check, dated June 25, 1991, and made payable to "Alfred L. Williams, Personal Rep. for Estate of Lulabelle [sic] Anderson".

On June 26, 1991, after negotiating a large purchase of cocaine from undercover police officers, Williams and Willis were arrested for conspiracy to possess with intent to distrib-

---

[1] The term "personal representative" includes executor and administrator. RCW 11.02.005. This opinion uses these three terms interchangeably.

ute 500 or more grams of cocaine. Williams was also charged with possession with intent to distribute 500 or more grams of cocaine. At the time of the arrest, Williams had on his person the cashier's check and $1,130 in currency, both of which were seized by the City of Bellevue. Williams and Willis were subsequently convicted.

On July 10, 1991, in order to contest the forfeiture of the property, Pruzan was appointed successor personal representative of the estate. The forfeiture action was commenced, and on April 13, 1992, the trial court granted each party partial summary judgment, decreeing that (1) the estate was the innocent owner of the money and had a superior interest in it for purposes of satisfying claims of creditors and expenses of administration and (2) the City had probable cause to seize the money and therefore had a claim in the probate proceedings to all funds that would otherwise be distributed to either Williams or Willis, in any capacity. Bellevue appeals.

The sole issue on appeal is whether Pruzan, as personal representative of the estate, qualifies as the innocent owner of the portion of the cashier's check needed to pay the creditors of the estate and the expenses of administration.

RCW 69.50.505(a)(7) provides for the forfeiture of all money and negotiable instruments furnished or intended to be furnished in exchange for a controlled substance. However, no property may be forfeited "to the extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent[.]" RCW 69.50.505(a)(7).[2] Once the seizing agency has shown probable cause for seizing an item, the burden shifts to the owner to show by a preponderance of the evidence that the property was used without his or her consent or knowledge.[3] *Rozner v. Bellevue,* 116 Wn.2d 342, 350, 804 P.2d 24 (1991).

---

[2] This portion of the statute is referred to throughout this opinion as the "innocent owner defense".

[3] Pruzan, the claimant, concedes that the City had probable cause to seize the items.

A recent Supreme Court case, *United States v. 92 Buena Vista Ave.*, ___ U.S. ___, 122 L. Ed. 2d 469, 113 S. Ct. 1126 (1993), sets forth guidelines for determining who can assert the innocent owner defense. In *Buena Vista*, the respondent's boyfriend had given her $240,000 to purchase a home, in which she lived between 1982 and 1989. *Buena Vista*, 113 S. Ct. at 1130. In 1989, the government initiated forfeiture proceedings against the home, claiming that it had been purchased with the proceeds of illegal drug transactions. The respondent contested the forfeiture, claiming that she was an innocent owner because she was unaware that the money used to purchase the home was obtained from illegal drug trafficking. *Buena Vista*, 113 S. Ct. at 1130.

The government argued that under the relation back doctrine, ownership of the money vested in the government at the time the illegal acts occurred. Therefore, the government claimed, the respondent could have no legitimate ownership interest in the house. *Buena Vista*, 113 S. Ct. at 1134. The Court disagreed, holding that the relation back doctrine does not preclude a transferee who unknowingly obtains proceeds from an illegal drug transaction from asserting the innocent owner defense.

To reach this conclusion, the Court first determined that the government's title to property does not vest until forfeiture has been decreed. *Buena Vista*, 113 S. Ct. at 1137. The Court then reasoned that because *someone* must own the property between the time that the illegal acts occur and the time that forfeiture is decreed, it is possible for an innocent transferee to obtain an ownership interest in the property during that period. *Buena Vista*, 113 S. Ct. at 1136. This innocent owner may then contest the forfeiture, thereby preventing the government's title from vesting and preventing the relation back doctrine from coming into play. *Buena Vista*, 113 S. Ct. at 1137.

Because of the similarity between the Washington forfeiture statute and the federal forfeiture statute, Washington courts have frequently relied on federal cases in interpreting our state statute. *See, e.g., Rozner*, at 351. In the present case,

we have determined that the applicability of *Buena Vista* to the facts before us depends on two factors: (1) whether the claimant, as personal representative of an estate, qualifies as an "owner" for purposes of asserting the innocent owner defense and (2) whether the claimant's knowledge of the illegal acts at the time he acquired his interest precludes him from asserting the defense. We conclude that the claimant's ownership interest is sufficient to allow him to assert the defense and that, under the unique circumstances presented here, his knowledge of the illegal acts does not preclude him from asserting the defense.

*A. Does the Claimant Qualify as an Owner for Purposes of Asserting the Innocent Owner Defense?*

RCW 11.04.250 provides that a devisee's title to real property vests immediately upon the death of the grantor, subject to the debts of the estate, family allowance, expenses of administration, and any other charges for which the real estate is liable under existing laws. Title to personal property, on the other hand, vests in the administrator of the decedent's estate for the payment of "expenses, debts, legacies and for distribution of the residue." *Devereaux v. Anderson*, 146 Wash. 657, 658, 264 P. 422 (1928).

In the present case, the cashier's check represented the proceeds from the sale of the home, the title to which vested in Williams at the time of Anderson's death, subject to the claims of creditors. However, regardless of whether the check itself is viewed as personal or real property, we conclude that the personal representative had an ownership interest in it to the extent that the money was needed to meet the claims of creditors who had fulfilled the statutory requirements for filing claims against the estate.[4]

---

[4]Although we affirm the trial court's order, we reject the claimant's contention and the trial court's conclusion that the estate itself was the owner of the check. We have found no authority supporting the proposition that an estate can "own" property. On the contrary, the relevant authority indicates that the indicia

If the check is treated as personal property, title to it vested in the administrator for the payment of creditors' claims and expenses of administration. *Devereaux*, at 658. In *People ex rel. Foreman v. Estate of Kawa*, 152 Ill. App. 3d 792, 504 N.E.2d 983 (1987), the bank opened a safety deposit box belonging to the decedent and discovered approximately $1,680 in currency and a quantity of cocaine. *Kawa*, 793-94. The State initiated a forfeiture action against the currency. The administrator of Kawa's estate asserted the innocent owner defense, claiming that title to the contents of the box vested in the estate immediately upon Kawa's death and that the estate, as a fictional entity, could not have known of the illegal acts. *Kawa*, at 797.

Relying on definitions of the word "owner" from a variety of sources, the court concluded that the administrator and beneficiaries of the estate were the "owners" of the property. *Kawa*, at 799-800. The court reasoned, however, that because the incidents of ownership were divided between the beneficiary and the administrator of the estate, each party holding an interest would have to demonstrate that he or she was innocent. As the court stated:

> Since the administrator is vested with the naked legal title to the personal property of an intestate, the equitable interest vests in the heirs and the administrator holds the property in trust for the payment of debts. The residue belongs to the distributees. Ownership of the money, thus, has both legal and equitable characteristics. The statute anticipates that interests in property may exist in more than one person and, therefore, limits the exemption "to the extent of the interest" of each owner. Thus, *the affirmative defense of the exemption would require proof that not only the administrator but also the heirs, to the extent of their respective interests, neither had knowledge nor gave consent to an exchange of the money and forfeitable substances.*

(Citations omitted. Italics ours.) *Kawa*, at 800. Thus, the court concluded that the administrator of the estate was an

---

of ownership of estate property are shared by the administrator and the beneficiaries of the estate.

owner of the currency and could assert the innocent owner defense to the extent of his interest. *Kawa*, at 800.[5]

Even if, however, the check is treated as real property because it represents the proceeds from real property, RCW 11.04.250 clearly indicates that Williams' ownership interest in the check was limited by the claims of creditors, whose interests are represented by the administrator. *See* RCW 11.04.250. In addition, *In re Estate of Eberle*, 4 Wn. App. 638, 484 P.2d 478 (1971) and *National Bank of Commerce v. Peterson*, 179 Wash. 638, 38 P.2d 361 (1934) support the view that the incidents of ownership of estate real property are shared by the beneficiary and the executor. *Eberle* states that the beneficiary's title to real property is "subject to the *trusteeship* of the executor during the probate of the estate". (Italics ours.) *Eberle*, at 646. *Peterson* states that the creditors to the estate claim "under [the] executor or administrator." *Peterson*, at 643. Thus, these cases indicate that the administrator has a narrow ownership interest in estate real property for the limited purpose of satisfying the legitimate claims of creditors of the estate.

■ Based on the above reasoning, we conclude that personal representative Willis had an interest in the cashier's check to the extent that those funds were needed to satisfy the legitimate claims of creditors and the expenses of administration. When Willis resigned and Pruzan took over as personal representative of the estate, the incidents of ownership that Willis possessed as personal representative were transferred to Pruzan.[6] Therefore, provided that Pruzan's knowledge of the seizure does not preclude him from being an innocent owner, he may assert the defense.

---

[5]The court concluded, however, that, although the administrator had standing as an owner to assert the defense, the administrator had not provided sufficient evidence to establish that he and the heirs were entitled to the defense. *Kawa*, at 800.

[6]As discussed *supra*, under *Buena Vista*, because the government's title to property does not vest until forfeiture is decreed, an innocent transferee can acquire ownership rights during the period between the time the illegal acts took place and the time that a judgment of forfeiture is entered.

## B. Does the Fact That the Claimant Knew of the Illegal Acts When He Became Personal Representative Preclude Him From Asserting the Innocent Owner Defense?

In *Buena Vista*, the government argued that allowing the respondent to assert the innocent owner defense was unsound because it would allow anyone to qualify as an innocent owner "if she was unaware of the illegal transaction when it occurred but learned about it before she accepted the forfeitable proceeds." *Buena Vista*, 113 S. Ct. at 1137. Because the respondent in that case claimed she *never* knew of the illegal acts, the Court did not address whether a transferee's knowledge of the illegal acts at the time of the transfer would preclude him or her from asserting the defense. However, the court did state that "equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property." *Buena Vista*, 113 S. Ct. at 1137.

Thus, under most circumstances, a transferee would be precluded from asserting the innocent owner defense where he or she knew that the money was tainted when it was received. This is because equitable considerations would weigh against allowing the transferee to personally profit from the knowing receipt of such property.

Here, the claimant knew the check had been seized when he was appointed personal representative. However, because of the representative nature of his interest, the equities weigh in favor of allowing him to assert the defense. As personal representative of the estate, the claimant is not acting on his own behalf, but on behalf of the creditors he represents. Although they are not secured creditors, these creditors have met the statutory requirements for filing their claims and are entitled to have these claims satisfied.

We conclude that under the unique circumstances presented by this case, the claimant's knowledge of the illegal acts at the time he obtained his interest does not preclude him from asserting the innocent owner defense to that portion of the check needed to satisfy the claims of creditors and the expenses of administration. This result is equitable and

fully consistent with the purpose of the forfeiture statute, which is to penalize wrongdoers by subjecting their property to forfeiture. The interest of Williams was always subject to the claims of creditors, and he therefore never had any ownership rights in the portion of the check representing those funds. His wrongdoing resulted in the forfeiture of his entire interest, while the interest of the claimant, as representative of the innocent creditors, remains intact.

The order of summary judgment is affirmed.

PEKELIS, A.C.J., and AGID, J., concur.

Review denied at 123 Wn.2d 1008 (1994).