[No. 62933-6-I.   Division One.   August 24, 2009.]

SNOHOMISH REGIONAL DRUG TASK FORCE ET AL., *Respondents*, v. REAL PROPERTY KNOWN AS 414 NEWBERG ROAD, SNOHOMISH, WASHINGTON, LOCATED IN SNOHOMISH COUNTY, *Defendant in Rem*, BRIAN A. PEARSON, *as Executor*, ET AL., *Appellants*, BANK OF AMERICA, NA, *Respondent.*

*Orly J. Sorrel* (of *Sorrel & Tall, Inc.*), for appellants.

*Janice E. Ellis, Prosecuting Attorney*, and *Mary K. Webber, Deputy*, for respondents Snohomish Regional Drug Task Force and Snohomish County.

*Andrew C. Rapp* (of *Wolfstone, Panchot & Bloch, PS*), for respondent Bank of America, NA.

¶1 DWYER, J. — It has long been the law in Washington that "a devisee can take no greater interest in the devised property than the devisor has to devise." *Slasor v. Slasor*, 111 Wash. 90, 99, 189 P. 546 (1920). In this appeal, the beneficiaries of the estate of Rodney J. Pearson[1] contend that they were entitled to assert the "innocent owner defense" to the forfeiture of a parcel of real property, notwithstanding that the property had been seized prior to Pearson's death based on his use of it for commercial marijuana production. Holding that Pearson was unable to devise a greater interest in his property than he had, that his interest was subject to the forfeiture proceedings as

---

[1] Because many of the appellants share surnames, their full names are used. "Pearson" refers to Rodney J. Pearson, the decedent.

filed, and, thus, that the testamentary transfer of the property could not prevent its forfeiture, we affirm.

I

¶2 The facts are not in dispute. Police responded to a trespass report from a neighbor of the property at issue, 414 Newberg Road.[2] When officers arrived at the neighbor's home, they saw a line of footprints and marijuana plant debris leading to the fence dividing the neighbor's property from 414 Newberg Road. It appeared to the officers that marijuana plants had been dragged from 414 Newberg Road across the neighbor's property. From the fence line, the officers saw that a barn located on the 414 Newberg Road property contained at least 20 to 30 large, clearly visible marijuana plants.

¶3 The police then sought and obtained a search warrant. The warrant authorized officers to search "a barn type structure on the south side of the property located at 414 Newberg Rd, Snohomish, WA." The warrant further stated that "[t]he main house at 414 Newberg Rd is a brown one story rambler style house with white trim around the windows (not to be searched)."

¶4 Disregarding this last statement in the warrant, the officers went directly to the residence at 414 Newberg Road, knocked on the front door, and, after informing the residents present therein that they were "serving a search warrant," conducted what was later described as a "protective sweep of the residence due to the past incidents involving firearms."[3]

¶5 In one of the bedrooms, an officer detected the odor of both fresh and burnt marijuana. Based on this odor, the officer approached a shed on the outside of the house, which was located near the room in the residence in which the smell of marijuana had been detected. He then sniffed,

---

[2] For convenience, the property is described by its street address.

[3] The record does not reveal the level of detail entailed in this search.

listened, and peered through the crack between the shed's door and doorframe. When he did so, he smelled the odor of marijuana, heard a fan, and could see artificial light coming from within the shed. Based on these observations, the officers then obtained a telephonic addendum to the warrant, extending their search authority to the residence and the shed.

¶6 In the barn, police discovered and seized 78 live marijuana plants measuring up to 13 feet tall. In the shed, they seized 42 smaller marijuana plants and assorted marijuana-growing paraphernalia. In the residence, they discovered additional marijuana paraphernalia. In total, the police seized more than 15 pounds of marijuana plant matter.

¶7 Following these events, the Snohomish Regional Drug Task Force (SRDTF) instituted a civil in rem forfeiture action against 414 Newberg Road, filing a lis pendens upon commencing the action and serving complaints against those with a record interest in the property: Pearson and Bank of America, which had recorded two deeds of trust against the property as security for loans to Pearson. In response to this forfeiture action, both Pearson and the bank filed ownership claims against the property. The forfeiture action was then stayed pending the resolution of criminal charges against Pearson, to which he eventually pleaded guilty.

¶8 On August 28, 2007—a little over a year after entering his plea—Pearson executed his last will and testament. In it, he appointed his son Brian Pearson as the personal representative of his estate, the bulk of which (including his interest in 414 Newberg Road) he bequeathed to his other living children, Susan Furman, Derek J. Pearson, Alicia Palm, Justin Pearson, and Rodney S. Pearson, and his grandson, Levi Yoder.[4] Four days later, Pearson died. His will was then submitted to probate, at which point SRDTF filed a

---

[4] Alicia Palm later disclaimed her interest in 414 Newberg Road in favor of her two minor children, Dylan J. Palm and Devin M. Palm. On the same day, Rodney S. Pearson disclaimed his interest in the property entirely.

probate claim against his estate, seeking the forfeiture of 414 Newberg Road. After Brian Pearson, as personal representative, rejected SRDTF's claim, he was substituted for Pearson in the forfeiture action. He and the estate's beneficiaries then filed pleadings purporting to assert independent claims against 414 Newberg Road.

¶9 These parties also filed a pleading entitled "Notice of Trial Amendment," in which they informed the court and the other parties that they intended to move, at any hearing on a dispositive motion, to amend their notice of claims in the forfeiture action to assert cross claims against Bank of America, alleging that it had "failed and neglected to tender defense of Plaintiffs' baseless claims." The purported basis for these cross claims against the bank was a settlement agreement between Bank of America and SRDTF, wherein it was agreed that if SRDTF succeeded in obtaining forfeiture of the property, it would pay to the bank, out of the proceeds of the forfeiture sale, the amount still owing on the loan secured by the deeds of trust, as well as any legal fees incurred by the bank as a result of the forfeiture proceedings.

¶10 On cross motions for summary judgment, the trial court rejected the claims of the estate and its beneficiaries against the property, as well as the motion to amend that they made in conjunction with their motion for summary judgment.

¶11 This appeal followed.

II

¶12 "On review of a summary judgment, this court must engage in the same inquiry as the trial court. A motion for summary judgment can be granted only if the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *City of Lynnwood v. $128 Cash*, 61 Wn. App. 505, 510, 810 P.2d 1377 (1991) (citation omitted). "A trial court's

decision to deny leave to amend is reviewed for an abuse of discretion." *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 728-29, 189 P.3d 168 (2008).

## III

¶13 According to the beneficiaries,[5] 414 Newberg Road is not subject to forfeiture pursuant to RCW 69.50.505 because they are entitled to assert the so-called "innocent owner" defense set forth in RCW 69.50.505(1)(h)(i). This presents a straightforward question: are the beneficiaries entitled to assert the "innocent owner" defense on their own behalf, as a result of 414 Newberg Road being transferred to them by will after the forfeiture action was commenced and the property seized? We hold that they are not, because the only interest in 414 Newberg Road that Pearson was able to devise was conditioned on a determination of whether he—he, not the beneficiaries of his estate—had knowingly used the property for the commercial production of marijuana.

¶14 The plain language of the drug-forfeiture statute, when read in conjunction with the lis pendens statute, compels this result. RCW 69.50.505(1)(h) provides that real property is "subject to seizure and forfeiture" if the property was

> used with the knowledge of the owner for the manufacturing . . . of any controlled substance . . . if such activity is not less than a class C felony and a substantial nexus exists between the commercial production or sale of the controlled substance and the real property. However:
>
> (i) No property may be forfeited pursuant to this subsection (1)(h), to the extent of the interest of an owner, by reason of any act or omission committed or omitted without the owner's knowledge or consent;
>
> . . . .

---

[5] For brevity, we refer to the estate and its beneficiaries, collectively the appellants, simply as "the beneficiaries."

(iii) The possession of marijuana shall not result in the forfeiture of real property unless the marijuana is possessed for commercial purposes, the amount possessed is five or more plants or one pound or more of marijuana, and a substantial nexus exists between the possession of marijuana and the real property. In such a case, the intent of the offender shall be determined by the preponderance of the evidence, including the offender's prior criminal history, the amount of marijuana possessed by the offender, the sophistication of the activity or equipment used by the offender, and other evidence which demonstrates the offender's intent to engage in commercial activity.

Thus, an owner of real property utilized for commercial marijuana production forfeits any interest in the property, RCW 69.50.505(1)(h)(iii), unless the marijuana production was undertaken "without the owner's knowledge or consent," RCW 69.50.505(1)(h)(i).

¶15 None of this is at issue. Instead, the issue presented is whether, after property is seized upon probable cause to believe that it is subject to forfeiture, the guilty owner of the property may defeat its forfeiture by transferring it to someone innocent of drug activity. We hold that the owner may not.

¶16 Under RCW 69.50.505(3), "proceedings for forfeiture shall be deemed commenced by the seizure" of the property. In turn, RCW 69.50.505(2) provides that such a seizure may be initiated by an authorized official filing an in rem action against the property, and that the "[s]eizure . . . shall include the filing of a lis pendens by the seizing agency." The lis pendens statute (one of our state's oldest, and substantially unchanged since 1893) is unambiguous:

At any time after an action affecting title to real property has been commenced . . . the plaintiff [or] the defendant . . . may file with the auditor of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in that county affected thereby. From the time of the filing only shall the pendency of the action be

constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he or she were a party to the action.

RCW 4.28.320. In other words, the filing of a lis pendens in an action involving title to real property serves two purposes. First, the recording of the lis pendens serves as notice to prospective purchasers of the property that its title is subject to dispute and, thus, that the record owner's interest in the property is in question. Second, the filing of a lis pendens serves to freeze the status of the property in time—a party to the action in which the lis pendens is filed may not alter the outcome of the underlying action by transferring the property to another because the cloud on the title follows the transfer.

¶17 Thus, essentially since statehood, it has been the rule in Washington that once proper notice is given in an action affecting title to real property (i.e., once a lis pendens is filed), persons who subsequently acquire an interest in the property do so subject to the property's ultimate disposition in the pending suit as that suit was filed, and may not assert defenses, based on their status as transferees, that were not available to the property's transferor. Likewise, it has long been recognized that persons who inherit real property are bound by the results of proceedings in which a lis pendens has been filed to the same extent as if they were purchasers for value. *Dennis v. Godfrey*, 122 Wash. 207, 212, 210 P. 507, 215 P. 71 (1922). This makes sense because, for even longer, it has been the law that "a devisee can take no greater interest in the devised property than the devisor has to devise." *Slasor*, 111 Wash. at 99.[6]

---

[6] This rule has likewise long been codified in the statutes governing wills in our state: "Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could *lawfully devise*." RCW 11.12.170 (emphasis added).

¶18 If all of this appears to point rather strongly to the conclusion that an owner whose real property has been seized and is subject to forfeiture cannot defeat forfeiture by transferring the property to an innocent party (by will or otherwise), it should. This is the legally correct conclusion. To conclude otherwise would be to simply ignore the lis pendens. Moreover, the language of the "innocent owner" provision itself mandates the rejection of a contrary conclusion, insofar as the defense is available only "to the extent of the interest" held by the claimant, which is the only interest that can be devised by will. Indeed, the beneficiaries are precisely correct when they write, outraged, that acceptance of SRDTF's arguments means that "no innocent transferee acquiring title after the seizure could ever assert the innocent owner defense and recover his/her property." This is, in fact, the case. The only title that such parties acquire is that which the transferor was able to convey. Accordingly, in a statutory drug-forfeiture action, the disposition of the subject property turns on the innocence of the property's owner at the time that the property is seized, not on the innocence of any subsequent transferees.

¶19 The beneficiaries cite to cases that they contend undermine this conclusion, but the authorities upon which they rely either do not constitute precedent or are inapplicable. First, the beneficiaries cite to *Guillen v. Contreras*, 147 Wn. App. 326, 195 P.3d 90 (2008), claiming that it stands for the proposition that courts routinely apply the innocent owner defense when property is transferred by will after the commencement of a forfeiture action. While it is true that the superior court in that case appeared to rule in a family's favor on that basis with respect to an item of personal property, *Guillen*, 147 Wn. App. at 330, *Guillen* is merely describing the superior court's ruling, not adopting it. The scope of the opinion is limited to discretionary review of an attorney fee issue. *Guillen*, 147 Wn. App. at 330. The case itself provides no support for the proposition urged herein.

¶20 The beneficiaries next cite to *City of Bellevue v. Cashier's Check for $51,000 & $1,130 in U.S. Currency*, 70

Wn. App. 697, 855 P.2d 330 (1993), for the proposition that the personal representative of an estate may assert the innocent owner defense on behalf of the estate, rather than on behalf of the decedent property owner. But that is not exactly the proposition for which *Cashier's Check* stands. In that case, acting on behalf of an estate's creditors, a successor personal representative was allowed to assert the innocent owner defense in order to prevent forfeiture of the estate's wrongly-distributed cash proceeds, after his predecessor and the sole beneficiary attempted to use those proceeds to purchase a large amount of cocaine. *Cashier's Check*, 70 Wn. App. at 699-700. This court held that the successor personal representative was entitled to rely upon the innocent owner defense because he "had an interest in the cashier's check [the proceeds] to the extent that those funds were needed to satisfy the legitimate claims of creditors and the expenses of administration." *Cashier's Check*, 70 Wn. App. at 704.

¶21 Thus, *Cashier's Check* addressed a scenario different from this case in a critical respect. In *Cashier's Check*, the actions of the predecessor personal representative and beneficiary that provided the basis for the seizure occurred *after* the transfer of the property into the estate; there was no doubt that the decedent—and hence, the estate—was innocent of any wrongdoing. 70 Wn. App. at 699-700. Moreover, the acts of the personal representative and the beneficiary constituted a wrongful distribution from the estate because they preceded the estate's payments to its creditors. In essence, the personal representative and the beneficiary stole money from the estate and attempted to use it to buy drugs, even though the estate's creditors had already asserted claims superior to those of the beneficiary in the probate proceeding. It is for this reason that the successor personal representative, as the administrator of the estate, was entitled to assert "a narrow ownership interest in estate real property for the limited purpose of satisfying the legitimate claims of creditors of the estate." *Cashier's Check*, 70 Wn. App. at 704. Moreover, it was solely

based on this "narrow ownership interest" that the personal representative was permitted to assert the innocent owner defense with respect to the estate's proceeds, and then *only* "to the extent that those funds were needed to satisfy the legitimate claims of creditors and the expenses of administration." *Cashier's Check*, 70 Wn. App. at 704.

¶22 In contrast, here, the actions of the *decedent* (Pearson) caused the property to be seized and the forfeiture proceeding commenced in the first place. Thus, before the estate ever entered probate, 414 Newberg Road was subject to SRDTF's claims in the forfeiture proceeding. Those claims *always* turned on the innocence of Pearson as the owner, and not the innocence of Pearson's successors in interest, because Pearson was the owner of the property at the time that it was seized. As SRDTF correctly observes, it is an unremarkable principle that a substituted transferee in a litigation affecting title to real property cannot assert defenses that were not available to the transferor because such a person's "rights are no better than those of its transferor's." *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 227, 901 P.2d 1060 (1995), *aff'd*, 130 Wn.2d 862, 929 P.2d 379 (1996). Here, any claim to the property that the beneficiaries had in the forfeiture proceeding was solely based on the fact that the estate was substituted for Pearson after Pearson's death.[7] The beneficiaries would have it that the transfer of the property extinguished SRDTF's claims to

---

[7] To the extent that the beneficiaries believe that they were entitled to assert the innocent owner defense based on their *independent* claims to 414 Newberg Road (i.e., any interest not derivative of that which was devised to them by Pearson), they are certainly wrong. The drug-forfeiture statute requires that any such claim be filed within 90 days of the property's seizure:

If any person notifies the seizing law enforcement agency in writing of the person's claim of ownership or right to possession of items specified in subsection (1)(b), (c), (d), (e), (f), (g), or (h) of this section within . . . ninety days in the case of real property, the person or persons shall be afforded a reasonable opportunity to be heard as to the claim or right.

RCW 69.50.505(5). In the absence of such a claim of ownership within 90 days, the property "shall be deemed forfeited." RCW 69.50.505(4).

Here, there is no question that the estate and its beneficiaries did not file independent claims of ownership to the property until more than three years after the 90-day time period had expired. Thus, any such claims were time barred.

it because as soon as Pearson died, they became the property's innocent owners; but this argument begs the question. The issue in the forfeiture proceeding was the *extent* of the interest in 414 Newberg Road that Pearson was able to devise. The innocence of the beneficiaries of Pearson's estate is irrelevant to the resolution of this issue.

¶23 The next case upon which the beneficiaries rely also does not support their contention that they inherited 414 Newberg Road free of the threat of forfeiture. In *State v. Brown*, 92 Wn. App. 586, 965 P.2d 1102 (1998), Division Two of this court examined a somewhat convoluted lawsuit in which a partially performed installment contract for the sale of real property was interrupted by the seizure of the buyer's interest in it, due to the buyer's use of the property to grow marijuana. The sellers entered into an agreement with the State to split the proceeds of a forfeiture sale of the property but later reneged, taking the property off the market. In response to the State's suit for breach of contract, the sellers asserted as a defense that they were the innocent owners of the property and, thus, that the agreement was unsupported by consideration (i.e., that the State had no interest in the property with which to bargain). *Brown*, 92 Wn. App. at 592-95. Questionably characterizing *Cashier's Check* as a purely equitable decision,[8] the court nonetheless determined that the case did not apply, holding that the sellers were not entitled to rely upon the innocent owner defense as described in *Cashier's Check* because they were not asserting it in a representative capacity. *Brown*, 92 Wn. App. at 596.

¶24 Regardless of the soundness of *Brown*'s application of *Cashier's Check*, *Brown* does not help the beneficiaries here. Ultimately, the case addressed whether the mere possibility of a favorable judgment in a forfeiture action

---

[8] In fact, the *Cashier's Check* court's application of equitable principles dealt with whether the successor personal representative's post hoc knowledge of the drug transaction impaired his innocence as an owner, *not* whether the innocent owner defense was available at all. *See Cashier's Check*, 70 Wn. App. at 705-06.

could serve as consideration for a contract, not whether the transfer of property could serve to defeat forfeiture. *See Brown*, 92 Wn. App. at 596-97. The case is silent on that question. Certainly, nothing within the decision suggests that a lis pendens somehow becomes ineffective in the forfeiture setting simply because a parcel of property's transfer occurs by devise rather than by sale.

¶25 The only other case to which the beneficiaries cite that even plausibly supports their position is *United States v. 92 Buena Vista Avenue*, 507 U.S. 111, 113 S. Ct. 1126, 122 L. Ed. 2d 469 (1993), in which the United States Supreme Court, examining the federal drug-forfeiture statute, firmly rejected the argument that, under the "relation back" doctrine, no person could qualify as an innocent owner unless he or she had acquired title to the subject property before the occurrence of the drug activity that prompted the forfeiture. *See Buena Vista*, 507 U.S. at 123-24. That is to say, the claim made by the government agency in that case is entirely different from the claim by SRDTF here: there, the agency seeking forfeiture of the property at issue (a parcel of property purchased for the unwitting owner with the proceeds of drug sales) sought to assert that an owner can essentially *never* be innocent—regardless of his or her own knowledge—if the government can prove that the property was acquired with the proceeds of illegal drugs. *See Buena Vista*, 507 U.S. at 116. This has nothing to do with the question presented here. SRDTF is not asserting that its ownership of the property somehow dates from when Pearson *planted* his marijuana crop, or that if the property were originally purchased with the proceeds of marijuana, then no subsequent purchasers, however innocent, could ever lawfully take title to it without some sort of "cleansing" by forfeiture. Rather, SRDTF advances the entirely reasonable notion that, once the property was seized and the forfeiture action commenced, Pearson was unable to preclude the property's forfeiture by giving it away to an innocent third party, whether by devise or otherwise.

¶26 In sum, the owner of real property subject to statutory forfeiture cannot defeat a properly commenced forfeiture action by transferring the property to an innocent party by bequest. Transferees in such circumstances are not "innocent owners," regardless of their involvement in drug activity, because the decedent can transfer only his or her interest in the property and that interest is subject to the outcome of the forfeiture action as it was originally filed.

## IV

¶27 The only remaining dispositive issue is whether the undisputedly admissible evidence left any doubt that 414 Newberg Road was being used for commercial marijuana production. Based solely on the evidence obtained from the barn (the subject of the original warrant), we conclude that it was.

¶28 Real property is subject to forfeiture pursuant to RCW 69.50.505 if marijuana found thereon "is possessed for commercial purposes, the amount possessed is five or more plants or one pound or more of marijuana, and a substantial nexus exists between the possession of marijuana and the real property." RCW 69.50.505(1)(h)(iii). Commercial intent is "determined by the preponderance of the evidence, including . . . the amount of marijuana possessed by the offender." RCW 69.50.505(1)(h)(iii).

¶29 The property at issue is subject to forfeiture under this standard. The number of marijuana plants found in the barn was, by itself, more than sufficient to indicate that the growing operation on the property was conducted for commercial purposes, rather than for personal consumption.

¶30 On summary judgment review, we may affirm on any basis within the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). Here, summary judgment in SRDTF's favor was proper.[9]

---

[9] The beneficiaries devote a considerable amount of their briefing to arguing that the initial purported "protective sweep" of the residence on 414 Newberg

## V

¶31 The last issue raised by the beneficiaries is their assertion that the trial court abused its discretion by denying them leave to amend their notice of claims in the forfeiture action. The beneficiaries' attempt to amend alleged two reasons that they believed required Bank of America to pay them money: (1) that the bank breached its duty to tender to them defense of the forfeiture action, requiring the bank to disgorge to the beneficiaries those legal fees that SRDTF agreed to pay to it out of the forfeiture sale, and (2) that the bank is liable to the beneficiaries for payments that the beneficiaries made to maintain the property during the forfeiture proceedings because the bank's failure to properly defend against forfeiture resulted in those funds being lost.

¶32 As best as we can discern, these claims stem from the beneficiaries' reading of the following obligation imposed upon Pearson, as grantor, by the deeds of trust:

> Pay, reimburse and indemnify Beneficiary [Bank of America] for all of Beneficiary's reasonable costs and expenses incurred in connection with foreclosing upon this Deed of Trust, defending any action or proceeding purporting to affect the rights or duties of Beneficiary or Trustee under this Deed of Trust, or managing the Property and collecting the Payments, including, without limitation, all attorneys' fees and value of the services of staff counsel, legal expenses, collection costs, costs of title search, and trustee's and receiver's fees to the maximum extent allowable by law.

---

Road, and resulting search of the shed, were unconstitutional searches under the Fourth Amendment of the United States Constitution. Regardless of the likely merit of this contention, however, summary judgment was appropriate based solely on the undisputedly admissible evidence found in the barn. Thus, whether the searches of the residence and shed were constitutional is irrelevant to the disposition of this appeal. "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case." *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). Accordingly, we decline to address the constitutional issues raised.

Clerk's Papers (CP) at 367-68. The other deed of trust imposed substantively identical indemnity obligations upon Pearson. *See* CP at 355-56.

¶33 In what appears to be an attempt at legal jujitsu, the beneficiaries argue that because this duty of indemnification required *Pearson* to reimburse the bank for "defending any action or proceeding purporting to affect" title to 414 Newberg Road, it necessarily imposed a corresponding duty on the part of the bank to tender defense and, derivatively, to refrain from accepting its legal fees out of the forfeiture sale proceeds as part of its settlement agreement with SRDTF. In other words, according to the beneficiaries, when the bank entered a settlement with SRDTF wherein it agreed to take its legal fees and costs (as well as the remaining balance owing on its loan to Pearson) out of the proceeds of the forfeiture sale in exchange for not contesting the forfeiture of the property, it was breaching its obligations to the beneficiaries twice over: by not leading the charge on the defense, and by taking its legal fees out of the forfeiture sale proceeds rather than by properly obtaining them from the government as a result of winning the underlying suit.

¶34 There are many problems with this argument, but the main one is that, at the point in time at which the trial court issued its ruling on the beneficiaries' actual motion to amend—filed incident to their motion for summary judgment—the court had already (correctly) determined that the property was subject to forfeiture. Thus, to the extent that the deeds of trust in any way entitled the owner of the property to legal fees (a deeply dubious proposition), that owner would imminently be SRDTF, not the beneficiaries. The settlement agreement between the bank and SRDTF was contingent upon the success of SRDTF's claims. *See* CP at 280. Once the property had been forfeited, the beneficiaries had no ownership interest in the property upon which to base any implied claim for indemnity and, thus, no basis upon which to allege that there was anything improper about the arrangement between the bank and SRDTF.

Moreover, to the extent that the beneficiaries believed that Pearson's obligation to indemnify the bank somehow entitled him to have the bank tender defense of the action from the *outset* of the forfeiture proceedings, that belief was utterly unsupported by the terms of the deeds of trust, which imposed indemnity obligations on the grantor, not the beneficiary, and which do not contain *any* mention of duties to defend or tender defense.

¶35 The beneficiaries' attempt to amend their notice of claims to include a demand that the bank reimburse them for their basic maintenance of 414 Newberg Road was likewise without any plausible legal basis. Paying real estate taxes, property insurance, and the costs of repair are basic aspects of owning real property. As the beneficiaries themselves repeatedly observe, until the decree of forfeiture was entered, they had legal title to the property. *Brown*, 92 Wn. App. at 595 (citing former RCW 69.50.505(c) (1993); *State v. Hendrickson*, 129 Wn.2d 61, 75, 917 P.2d 563 (1996)). Prior to the entry of the forfeiture decree, the beneficiaries attempted to maintain clean title to the property by making the payments associated with its ownership. They hoped that they would succeed in precluding forfeiture and wished to prevent any further cloud on the property's title in the event that they were successful. The fact that they were *not* successful does not provide a basis to recoup their voluntary payments, especially not from the bank, which certainly had no obligation to make the payments on their behalf.[10]

¶36 Where it is obvious from the record why amendment would have been futile, the trial court does not abuse its discretion by failing to explain its denial of leave to amend. *Rodriguez*, 144 Wn. App. at 730.

---

[10] The beneficiaries' notice of their intent to amend also contained passing reference to RCW 4.84.330. To the extent that the beneficiaries believed that this statutory provision in some way provided them with a claim against the bank arising out of the deeds of trust, they are, again, wrong. On its face, RCW 4.84.330 addresses the award of attorney fees in actions on contracts that contain unilateral attorney fee provisions. The statute has little, if any, applicability to contractual provisions requiring indemnification of legal costs incurred as a result of actions brought by third parties. In any event, any duty to indemnify was the grantor's, not the bank's.

¶37 The trial court did not abuse its discretion here.

## VI

¶38 The beneficiaries request an award of appellate attorney fees. While RCW 69.50.505 does provide for an award of attorney fees to claimants who prevail in drug-forfeiture actions, the beneficiaries have not prevailed. Accordingly, the request for an award of attorney fees is denied.

¶39 Affirmed.

SCHINDLER, C.J., and AGID, J., concur.

Review denied at 168 Wn.2d 1019 (2010).